## BON v. FENLON.

(Supreme Court, Appellate Division, Second Department. October 11, 1904.)

1. LANDLORD AND TENANT—LEASE—ACTION FOR RENT.

> Defendant occupied certain apartments in ·pursuance of a scheme to convey the impression that the apartments rented for $1,100 per year, the arrangement being that defendant should pay a small amount early in the year, and then to make payments at the rate of $91.67 per month for the remainder of the time, so that, if the year was completed, it would amount to $900. Defendant, whose tenancy under such arrangement began in October, paid $75 on October 8th, and paid no more until January, from and after which time to the termination of his tenancy in May he gave five checks for $91.67 each. *Held* that, in the absence of proof that such checks were not received in full payment of the rent due at the several periods when the checks were given, it would be so presumed, so that neither the landlord nor his assignee were entitled to recover alleged additional rent due after termination of the tenancy.
>
> Hooker, J., dissenting.

Appeal from Municipal Court, Borough of Brooklyn, First District.

Action by Isidore M. Bon against John T. Fenlon. From a Municipal Court judgment in favor of defendant, plaintiff appeals. Affirmed.

See 84 N. Y. Supp. 858.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Alvan R. Johnson, for appellant.

John V. Judge, for respondent.

WOODWARD, J. Upon a previous appeal in this case (88 App. Div. 612, 84 N. Y. Supp. 858) we held that the defendant occupied the premises of the plaintiff at will; that he could terminate his tenancy at any time; and that there was nothing due for the months of June, July, August, and September, 1902, the defendant having vacated the premises in May. On the case coming on for a new trial the plaintiff adopted a new theory, and attempted to recover the amount of rent alleged to have been earned during the time the tenant was in possession at the rate of $900 per year. That is, on this appeal it is claimed that the terms of the contract called for the payment of rent at the rate of $900 per year, the plaintiff being in possession for eight months at $75 per month, making a total charge of $600, on which payments had been made aggregating $533, leaving an unpaid balance of $66.66; and it is urged, the plaintiff showing assignments of any rents which might have been due his predecessors in title, that because the trial

89 N.Y.S.—61

court failed to give judgment for this amount the judgment should be reversed.

We are of opinion that this contention was without merit. The scheme under which the defendant occupied the premises was designed to convey the impression that the apartments under consideration rented for $1,100 per year. To this end it appears to have been arranged that the defendant should pay a small amount early in the year, and then to make payments at the rate of $91.67 per month for the remainder of the time, so that, if the year was completed, it would amount to the sum of $900. The defendant, whose tenancy under this arrangement began in October, paid $75 on the 8th of that month. He paid no more until January, and from that time to the termination of his tenancy in May he gave five checks for $91.67 each; and there is no reason to doubt, under the conceded facts in this case, that these various checks were received in full payment of the rents due at the several periods when the checks were given, so that the assignments in evidence conveyed no rights to the plaintiff, who is, with his predecessors in title, the victim of the sharp practice, which undertook to give a fictitious value to the premises involved. The defendant paid all of the rent which he was under any obligations to pay under the terms of his agreement, and if he is benefited by reason of the secret contract it is not for this court to interfere in behalf of those who claim rights under the same agreement on the ground that it was collusive or intended to defraud. The plaintiff in this action can have no better standing than those under whom he claims title, and the evidence shows that the defendant has discharged all of his obligations.

The judgment appealed from should be affirmed, with costs.

HIRSCHBERG, P. J., and JENKS, J., concur. BARTLETT, J., concurs in result.

HOOKER, J. (dissenting). Our decision on the first appeal (88 App. Div. 612, 84 N. Y. Supp. 858) was to the effect that there was nothing due from the defendant to the plaintiff for rent for the months of June, July, August, and September, 1900. At the time of the commencement of the new trial directed by us the plaintiff amended his bill of particulars so as prima facie to show that there was still a balance of rent due from the defendant, and unpaid by him up to the time the plaintiff actually vacated the premises the last of May. I cannot vote for an affirmance of the judgment now in review for the reason that to my mind the evidence is undisputed, and the testimony of the defendant admits, that there was a balance of such rent due from him. His second year's tenancy was decided on the prior appeal not to have been under the terms of the lease he entered into in October, 1901. That lease, it is true, provided for unequal monthly payments, but cannot be looked to for an expression of the terms of the new tenancy commencing October, 1902. This new tenancy was to be at the rate of $900 per year, and this statement of the terms of the contract in this particular is taken from the mouth of the defendant himself when he says that the rate for the year commencing October, 1902, was to be $900. The use of the word "rate" necessarily implies a proportionate

part of that sum for the use and occupation for a fractional part of a year. In my opinion there is no evidence to support the statement made in the prevailing opinion that the various checks the defendant gave from January to May, 1903, "were received in full payment of the rents due at the several periods when the checks were given." The checks are not so marked. No letter to that effect accompanied them, and there is no word from the testimony of any witness that such was the understanding. The defendant and the owner expected in October, 1902, that the defendant would pay at the rate of $900 a year. This he has not done, and at that rate still owes a balance of $66.66, and substantial justice will not obtain by allowing him to escape the payment of that obligation because he remitted checks of $91.67 each for several preceding months, which happened to be the payments called for in an independent lease under which he occupied in a preceding year.

My opinion is that the judgment should be reversed, and a new trial ordered.